IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

BLAKE O. WILSON,[1]

     Petitioner,

v.

     Case No. 3:24-CV-01145-NJR

JEREMIAH BROWN,

     Respondent.

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Petitioner Blake O. Wilson, an inmate of the Illinois Department of Corrections who is currently incarcerated at Lawrence Correctional Center, brings this habeas corpus action pursuant to 28 U.S.C. § 2254 to challenge the constitutionality of his state conviction. (Doc. 1). Respondent Jeremiah Brown, the warden at Lawrence, has moved to dismiss the petition as time-barred. (Doc. 31). For the reasons set forth below, the motion is granted, and the petition is dismissed.

BACKGROUND

*Conviction in State Court*

In October 2016, Wilson was charged with armed robbery in Champaign County, Illinois. (Doc. 31-1, p. 1); *People v. Wilson*, Case No. 2016CF001449. During his trial, a man named Nathan Thompson testified that he entered an apartment in response to an online

---

[1] On the electronic docket, Petitioner is listed as "Blake D. Wilson." After reviewing the original petition and the materials submitted by Respondent, this appears to be a typographical error. The Clerk of Court is DIRECTED to correct the docket to reflect that Petitioner's name is "Blake O. Wilson."

Page 1 of 14

prostitution advertisement. (Doc. 17-2). The two women who had admitted him to the apartment left, and two men — one short and one tall — entered the room and robbed him. Thompson testified that the shorter man possessed a "black or blued subcompact pistol." (*Id.*). Once Thompson escaped to his truck and sped away, the shorter man fired a shot in his direction. He proceeded to a gas station and called the police.

On arriving at the apartment, the police arrested several people, including Wilson, who is 6 feet 2 inches tall. They also recovered a Ruger LCP .380-caliber pistol, along with a spent casing on the back porch which was matched to that weapon, and a black BB gun. One of the women who lured Thompson to the apartment, Chelsea McReynolds, pleaded guilty to robbery and testified against Wilson at his trial. A jury ultimately found Wilson guilty; he was sentenced to 34 years in prison. (Doc. 31-1, p. 7).

Wilson appealed his conviction, arguing that his counsel rendered ineffective assistance for failing to tender a jury instruction on the lesser included offense of robbery. (Doc. 17-2). On April 9, 2020, the Illinois Appellate Court affirmed, reasoning that Wilson failed to rebut the presumption that he had authorized his attorney's decision not to tender the instruction in order to aim for a complete acquittal. (*Id.*). Wilson filed a petition for leave to appeal to the Illinois Supreme Court, which the court denied on November 18, 2020. *See People v. Wilson*, 159 N.E.3d 958 (Ill. 2020) (table). He did not seek a writ of certiorari from the Supreme Court. (Doc. 1, p. 2).

*Post-Conviction Proceedings in State Court*

On February 17, 2022, Wilson filed a state habeas complaint under 735 Ill. Comp. Stat. 5/10-101, *et seq.*, in Champaign County Circuit Court. (Doc. 17-4). He argued that

McReynolds, one of the witnesses against him, concealed that she was testifying pursuant to a plea bargain, and the State did not correct the record. (*Id.*). The state circuit court dismissed the complaint, and the Illinois Appellate Court affirmed. (Doc. 17-6). The court explained that Wilson's claim was not cognizable in a state habeas corpus proceeding because it was not a claim that the state court lacked jurisdiction and did not involve a post-conviction event entitling him to release. (*Id.*). On September 27, 2023, the Illinois Supreme Court denied his petition for leave to appeal. *Wilson v. Rightnowar*, 221 N.E.3d 353 (Ill. 2023). The record does not indicate that Wilson sought certiorari from the Supreme Court.

On October 7, 2022, Wilson filed a state postconviction petition under 725 Ill. Comp. Stat. 5/122-1. (Doc. 31-1, p. 9). On January 4, 2023, the state circuit court denied the petition as "frivolous and patently without merit." (*Id.* at pp. 9-10). There is no indication in the state court docket that Wilson appealed that decision.

On November 13, 2023, Wilson filed a "Petition to Vacate Judgment Under Section 2-1401" in state court. (Doc. 17-8). Generally, he asserted that his trial counsel performed deficiently by failing to object to certain testimony of his co-defendant. (*Id.*). On February 22, 2024, while that petition was pending, he filed a petition for resentencing. (Doc. 31-1, p. 11). On March 27, 2024, the state circuit court denied both petitions. (*Id.* at p. 12). On February 7, 2025, the Illinois Appellate Court affirmed the dismissal of the section 2-1401 petition as untimely, and the mandate issued on March 19, 2025. (Doc. 28-1; Doc. 31-1, p. 12).

On December 16, 2024, while the appeal was pending, Wilson filed a "Motion for

Resentencing Based on the Accountability Theory," which the circuit court denied on April 3, 2025. (*Id.*).

*Federal Habeas Petition*

On April 19, 2024, Wilson filed the present petition under 28 U.S.C. § 2254, with a proof of service dated April 14, 2024. (Doc. 1). The petition raises the following four grounds for relief:

- **Ground I:** Ineffective assistance by trial counsel for failing to obtain a lesser included offense instruction.

- **Ground II:** A false statement that he was involved in another armed robbery was improperly considered at sentencing.

- **Ground III:** His Fourteenth Amendment rights to due process and equal protection were violated when a witness, Chelsey McReynolds, falsely testified that she did not receive a deal to testify against him and the prosecutor did not correct the record.[2]

- **Ground IV:** Ineffective assistance by trial counsel for failing to object to evidence that he was armed with a firearm when other evidence suggested that another individual was responsible.

- **Ground V:** Ineffective assistance by trial counsel for failing to inform him until the last day of trial that a prosecutor on the case was engaged to a detective who investigated the case.

(*Id.* at pp. 3-5).

On January 2, 2025, Respondent moved to stay the case while the Illinois state courts considered his post-conviction motion under 735 Ill. Comp. Stat. 5/2-1401. (Doc. 17). The Court granted the request and stayed the case. (Doc. 26). On December 16,

---

[2] Although Wilson did not explicitly label it as such, this is essentially a claim under *Napue v. Illinois*, which holds that a prosecutor violates the Fourteenth Amendment when she knowingly obtains a conviction through use of false evidence or "although not soliciting false evidence, allows it to go uncorrected when it appears." 360 U.S. 264, 269 (1959).

2025, Respondent filed a status report indicating that the state appellate court had affirmed the trial court's dismissal of Wilson's section 2-1401 petition and that Wilson did not file a petition for leave to appeal that decision to the Illinois Supreme Court. Respondent further stated that Wilson had filed a successive postconviction petition in state court on September 2, 2025, but argued that his federal petition was time-barred even considering that ongoing proceeding. (Doc. 28). The Court lifted the stay, and Respondent filed the present motion to dismiss Wilson's petition on January 27, 2026. (Doc. 31).

Wilson did not respond to the motion until well after the deadline had lapsed. Generally, he argues there are no time limits to raising an alleged *Napue* violation based on false trial testimony. (Doc. 32). He also attached a prison grievance, dated August 13, 2022, in which he seeks recompense for an alleged failure to accommodate his religious diet. (*Id.* at p. 2-3). Those documents have no apparent relevance to any issue in this case.

## LEGAL STANDARD

Under Section 2254, a district court shall review an application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court only on the ground that he is in custody in violation of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). Federal habeas review serves as "a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 332, n. 5 (1979) (Stevens, J., concurring)).

Habeas relief is restricted to cases where the state court determination "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States" or "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2).

### DISCUSSION

Respondent argues that Wilson's petition is time-barred. A one-year statute of limitations applies to petitions for writs of habeas corpus. 28 U.S.C. § 2244(d). The limitation period is triggered by the latest of the following events:

(A)    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B)    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C)    the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D)    the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Id. § 2244(d)(1)(A)-(D).

Respondent says Wilson's limitations period began the date his judgment became final, § 2244(d)(1)(A), and Wilson does not argue otherwise.

The Illinois Supreme Court denied Wilson's petition for leave to appeal on

Page 6 of 14

November 18, 2020. *People v. Wilson*, 159 N.E.3d 958 (Ill. 2020) (table). He did not seek a writ of certiorari from the Supreme Court; his conviction thus became final at the expiration of his deadline for doing so. *Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012) (explaining that a judgment becomes final upon expiration of deadline to petition for writ of certiorari).

Ordinarily, litigants have 90 days to seek certiorari from the Supreme Court. *See* U.S. Sup. Ct. R. 13. During the COVID-19 pandemic, however, the Court extended the deadline to 150 days. *See* Order Addressing the Extension of Filing Deadlines (COVID-19), 334 F.R.D. 801 (Mar. 18, 2020), *rescinded by* Miscellaneous Order Rescinding COVID-19 Related Orders, 338 F.R.D. 801 (July 19, 2021). Accordingly, Wilson's conviction became final on April 19, 2021, and his deadline to file a § 2254 petition was one year later, on April 19, 2022.[3]

A "properly filed" state post-conviction petition tolls the one-year limitations period for the duration of state postconviction review. 28 U.S.C. § 2244(d)(2). "The petition must actually be filed in the state court to toll the limitations period. A motion for leave to file a successive postconviction petition does not stop the clock unless leave to file is granted." *Reed v. Jones*, No. 11 C 6387, 2025 WL 416828, at *4 (N.D. Ill. Feb. 6, 2025) (citing *Martinez v. Jones*, 556 F.3d 637, 638–39 (7th Cir. 2009)). Wilson filed his state habeas corpus complaint challenging the constitutionality of his conviction on February 17, 2022, by which point 61 days remained within the limitations period. (Doc. 17-4). His

---

[3] Adding 150 days to the date the Illinois Supreme Court denied Wilson's petition for leave to appeal yields a deadline of April 17, 2021, but that date was a Saturday, so the deadline was extended to the next business day. *See* U.S. Sup. Ct. R. 30(1).

state habeas complaint remained pending until September 27, 2023, when the Illinois Supreme Court denied his petition for leave to appeal. *Wilson v. Rightnowar*, 221 N.E.3d 353 (Ill. 2023).[4]

On November 13, 2023, Wilson filed another collateral attack on his conviction based on 735 Ill. Comp. Stat. 5/2-1401. (Doc. 17-8).[5] With certain exceptions not applicable here, a section 2-1401 petition has a two-year limitations period. *See* 735 Ill. Comp. Stat. 5/2-1401(c). Wilson was convicted and sentenced in 2017. Accordingly, the Illinois courts dismissed the petition as untimely. (Order, *People v. Wilson*, No. 5-24-0577 (Ill. App. Ct. Feb. 7, 2025) (Doc. 28-1)). A post-conviction filing deemed untimely by a state court does not toll the limitations period under § 2244(d)(2). *Pace v. DiGuglielmo*, 544 U.S. 408, 417 (2005). Thus, the 200-day period between September 27, 2023, and April 14, 2024, when Wilson filed his petition in this Court, was not tolled. On September 27, 2023, Wilson only had 61 days left on the limitations period. When he filed his federal petition, it was 139 days late.

Notwithstanding the limitations on statutory tolling available under § 2244(d)(2), equitable circumstances can suffice to toll the federal filing deadline. *Holland v. Florida*, 560 U.S. 631, 645 (2010). To be entitled to equitable tolling, a petitioner must demonstrate that (1) he has been diligently pursuing his rights, and (2) some extraordinary

---

[4] The time in which an individual may file a petition for a writ of certiorari from a state post-conviction petition is not tolled. *See Lawrence v. Florida*, 549 U.S. 327, 332 (2007).

[5] Wilson's October 2022 petition (Doc. 31-1, p. 9) does not help him because it overlaps fully with his other pending state habeas petition. *See Jones v. Brookhart*, No. 20 C 5769, 2021 WL 2529599, at *2 (N.D. Ill. June 21, 2021) ("Concurrent state post-conviction proceedings do not add to the tolled time; rather, the clock begins to run again following the conclusion of the latest of the pending collateral proceedings.").

circumstance prevented his timely filing. *Holland*, 560 U.S. at 649 (citing *Pace*, 544 U.S. at 418). The habeas petitioner carries the burden of establishing both of these factors. *Tucker v. Kingston*, 538 F.3d 732, 734-35 (7th Cir. 2008). The Seventh Circuit has described equitable tolling as "an extraordinary remedy" that is "rarely granted." *Obriecht v. Foster*, 727 F.3d 744, 748 (7th Cir. 2013).

Wilson does not explicitly seek equitable tolling, nor does he allege any circumstances that would support further inquiry into whether tolling is appropriate. To the extent that Wilson mistakenly believed his petition was timely, it is well-settled that such explanations generally will not suffice. *See Arrietta v. Battaglia*, 461 F.3d 861, 867 (7th Cir. 2006) ("Mistakes of law or ignorance of proper legal procedures are not extraordinary circumstances warranting invocation of the doctrine of equitable tolling.").

It is true that a claim of actual innocence can also serve as a "gateway" around the time-bar. *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013). "A claim of actual innocence must be both credible and founded on new evidence." *Arnold v. Richardson*, 14 F.4th 780, 782 (7th Cir. 2021) (cleaned up). The new evidence need not be newly *discovered*, but the petitioner cannot rely on evidence that already was presented at trial. *Jones v. Calloway*, 842 F.3d 454, 461 (7th Cir. 2016). In weighing the impact of the new evidence, the court must consider the entire evidentiary record and assess whether "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *House v. Bell*, 547 U.S. 518, 537 (2006) (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)). "The gateway should open only when a petition presents 'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is

Page 9 of 14

also satisfied that the trial was free of nonharmless constitutional error." *McQuiggin*, 569 U.S. at 401 (quoting *Schlup*, 513 U.S. at 316).

Respondent asserts that Wilson has not claimed that he is actually innocent, and that the record would not support any such claim, given the strength of the evidence against him at trial. He also contends that Wilson presents no new evidence to support his claim. However, Wilson's response brief, generously construed, parlays his *Napue* claim into an actual innocence argument. His general theory is that McReynolds, one of his alleged accomplices, falsely testified that she had not received a plea deal in exchange for her testimony, and the prosecutor did not correct this misstatement. As this "misstatement" was not before the jury, it is arguably new evidence that could be considered. Wilson's problem is that this evidence falls far short of meeting his burden of showing that it is "more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Schlup*, 513 U.S. at 327.

To start, it merits emphasis that he has offered no evidence that McReynolds's plea agreement *was* in exchange for her testimony against him at trial so that her trial testimony was false. He speculates that she did, assuming that it would have been illogical for the prosecutor to permit her to plead to robbery, rather than armed robbery, without an agreement to testify, but speculation is not evidence. He also has no answer to significant inculpatory evidence, including the testimony of the victim and the officers who located him at the scene of the robbery. (Doc. 17-2).[6] Even if there were reason to

---

[6] Wilson appears to think that the jury could have disbelieved McReynolds's testimony and could find that he only possessed the BB gun and therefore cannot be guilty of armed robbery. But even if that were true, the jury still could reasonably find Wilson guilty of armed robbery under Illinois law on an accountability

doubt McReynolds's testimony, Wilson has not met his burden of showing that no reasonable juror would have convicted him.

On September 2, 2025, Wilson filed another post-conviction motion pending in state court, and that proceeding remains pending. (Doc. 31-1, p. 13). However, the pendency of that petition does nothing to disturb the untimeliness of Wilson's federal petition. *See De Jesus v. Acevedo*, 567 F.3d 941, 943 (7th Cir. 2009) ("[A] state proceeding that does not begin until the federal year has expired is irrelevant."). The Court therefore concludes that Wilson's federal petition is time-barred and must be dismissed.

## CONCLUSION

For these reasons, Respondent's motion to dismiss (Doc. 31) is **GRANTED**. The Petition for Writ of Habeas Corpus filed by Petitioner Blake O. Wilson (Doc. 1) is **DISMISSED with prejudice**, and the Clerk of Court is **DIRECTED** to enter judgment accordingly and close this case.

## CERTIFICATE OF APPEALABILITY

A certificate of appealability is required to appeal from the dismissal or denial of a Section 2254 petition. *See* Fed. R. App. P. 22(b); 28 U.S.C. § 2253(c)(1). Pursuant to Rule 11 of the Rules Governing Section 2254 Cases, this Court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate should be issued only where a petitioner "has made a substantial showing of the denial of a

---

theory, and Wilson offers no argument otherwise. *See* 720 Ill. Comp. Stat. 5/5-2 (providing that a person is accountable for the acts of another if "either before or during the commission of an offense, and with the intent to promote or facilitate that commission, he or she solicits, aids, abets, agrees, or attempts to aid that other person in the planning or commission of the offense.").

constitutional right." 28 U.S.C. § 2253(c)(2). In order for a certificate of appealability to issue, a petitioner must show that "reasonable jurists" would find this Court's "assessment of the constitutional claims debatable or wrong." *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Buck v. Davis*, 580 U.S. 100, 115 (2017). Where a petition is dismissed on procedural grounds without reaching the underlying constitutional issue, the petitioner must show both that reasonable jurists would "find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

Here, no reasonable jurist would debate this Court's ruling that Wilson's petition is time-barred. Accordingly, the Court denies a certificate of appealability. Wilson may reapply to the United States Court of Appeals for the Seventh Circuit for a certificate of appealability if he wishes to pursue an appeal. *See* Fed. R. App. P. 22(b); 28 U.S.C. § 2253(c)(1).

## NOTICE OF APPELLATE RIGHTS

If Wilson wishes to contest this Order, he has two options. He may seek review of the Order by the Seventh Circuit or request the undersigned to reconsider the Order before going to the Seventh Circuit. If Wilson chooses to go straight to the Seventh Circuit, he will only be allowed to proceed on his appeal if he first obtains a certificate of appealability. The undersigned has already declined to issue a certificate of appealability. So, Wilson must request a certificate of appealability from the Court of Appeals pursuant to Rule 22 of the Federal Rules of Appellate Procedure and 28 U.S.C. § 2253(c). He must

also file a notice of appeal within 30 days from the entry of judgment or order appealed from. Fed. R. App. P. 4(a)(1)(A). The deadline can be extended for a short time only if Wilson files a motion showing excusable neglect or good cause for missing the deadline and asking for an extension of time. Fed. R. App. P. 4(a)(5)(A), (C); *see also Sherman v. Quinn*, 668 F.3d 421, 424 (7th Cir. 2012) (explaining the good cause and excusable neglect standards); *Abuelyaman v. Illinois State Univ.*, 667 F.3d 800, 807-08 (7th Cir. 2011) (explaining the excusable neglect standard).

The current cost of filing an appeal with the Seventh Circuit is $605.00. The filing fee is due at the time the notice of appeal is filed. Fed. R. App. P. 3(e). If Wilson cannot afford to pay the entire filing fee up front, he must file a motion for leave to appeal *in forma pauperis* ("IFP motion") along with a recent statement for his prison trust fund account. *See* Fed. R. App. P. 24(a)(1)(C). The IFP motion must set forth the issues Wilson plans to present on appeal. *See* Fed. R. App. P. 24(a)(1)(C). If he is allowed to proceed IFP on appeal, he will be assessed an initial partial filing fee. 28 U.S.C. § 1915(b)(1). He will then be required to make monthly payments until the entire filing fee is paid. 28 U.S.C. § 1915(b)(2).

On the other hand, if Wilson wants to start with the undersigned, he should file a motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e). The motion *must* be filed within 28 days of the entry of judgment, and the deadline *cannot* be extended. Fed. R. Civ. P. 59(e); 6(b)(2). The motion also must comply with Rule 7(b)(1) and state with sufficient particularity the reason(s) that the Court should reconsider the judgment. *Elustra v. Mineo*, 595 F.3d 699, 707-08 (7th Cir. 2010); *see also Blue v. Hartford Life*

*& Acc. Ins. Co.*, 698 F.3d 587, 598 (7th Cir. 2012) ("To prevail on a Rule 59(e) motion to amend judgment, a party must clearly establish (1) that the court committed a manifest error of law or fact, or (2) that newly discovered evidence precluded entry of judgment.") (citation and internal quotation marks omitted).

So long as the Rule 59(e) motion is in proper form and timely submitted, the 30-day clock for filing a notice of appeal will be stopped. Fed. R. App. P. 4(a)(4). The clock will start anew once the undersigned rules on the Rule 59(e) motion. Fed. R. App. P. 4(a)(1)(A), (a)(4), & (a)(4)(B)(ii). To be clear, if the Rule 59(e) motion is filed outside the 28-day window or "completely devoid of substance," the motion will not stop the clock for filing a notice of appeal; it will expire 30 days from the entry of judgment. *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 826 (7th Cir. 2014); *Martinez v. Trainor*, 556 F.2d 818, 819-20 (7th Cir. 1977). Again, this deadline can be extended only on a written motion by Wilson showing excusable neglect or good cause.

**IT IS SO ORDERED.**

**DATED:  July 30, 2026**

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**